## UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **JAMES LONNIE PURVIS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. 20-00456-KD-B** |
| | ) | |
| **JAMES WARD,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>ORDER</u>

This action is before the Court on the Motion for Summary Judgment, Memorandum, and Exhibits filed by Defendants James Ward, Ray Farmer, and Cody Hiers[1] (Docs. 39, 40, 41), the Response and Exhibits filed by Plaintiff James Lonnie Purvis (Doc. 48), and Defendants' Reply (Doc. 52). Upon consideration, and for the reasons set forth herein, the motion is GRANTED.

## I.   <u>Factual background[2]</u>

James Lonnie Purvis ("Purvis") was a pre-trial inmate at the Escambia County Correctional Facility. Warden James Ward ("Ward") assigned Purvis to the road crew, which is made up of inmates who leave the jail to pick up litter. During this time, Purvis and other road crew inmates were housed in Unit 3. Several other inmates in that Unit began asking Purvis to bring contraband into the jail. Purvis told the inmates he would not do so.

---

[1] The plaintiff filed an amended complaint which no longer includes Cody Hiers as a defendant, but rather names Williams Hiers as a defendant.  Accordingly, the motion is moot as to Cody Hiers. Defendant Williams Hiers has not been served the complaint.

[2]  The facts are viewed in the light most favorable to the plaintiff.

Purvis reported to Ward that other inmates were trying to get him to bring in contraband, but he was not going to bring it in. Purvis testified that Ward "moved everybody on the road crew out of unit three except me." (Doc. 39-1 at 9).  Purvis testified that at that point, he was "the only one back [in Unit 3]" on the roadcrew and thus the inmates "only lifeline . . .  to bring in contraband." (Id.). Purvis testified that he "begged" Ward "for three weeks to move" him, but he "wouldn't do it." (Id.).  Purvis testified that at about the same time, he also asked Major Ray Farmer ("Farmer") to move him to "the gym with the rest of the road crew" because the inmates "were trying to get [him] to bring in contraband and [Farmer] wouldn't do it." (Id.).

Purvis testified that he had not been physically threatened by the inmates until the morning September 26, 2018, the date he was attacked by other inmates. On that morning, an inmate asked Purvis to bring in contraband from outside the jail and told him where to find it. Purvis responded that he would not do so. The inmate told Purvis that if he did not, "we are going to hurt you and we are going to hurt you real bad." (Doc. 39-1 at 15). Purvis saw the package while out on the work crew, but did not pick it up as requested. (Id.)

As to what happened when he returned to the facility, Purvis testified as follows:

I told my road boss - - I said, would you please go in there and get them to move me, I said because they wanted me to bring a pack in and - - and I ain't got it, and I'm not going to do it.  I said, now I need to be moved to the gym because they threatening to hurt me if I go back there and I didn't bring their pack in.

So my road boss[3] went in there and talked to the Warden [Ward]. The Warden called me in there and I told him the story I just told you, and he told me I was full of shit. That's exactly that - - that was his exact words. He said, go get Officer Hiers to move him to the gym.  I said, sir, I need to be escorted all the way to my cell. I said, they said they was going to hurt me if I didn't bring that pack.

---

[3] Purvis road boss was Larry Quates. (Doc. 39-2 at 2).

He said, tell Officer Hiers to escort him all the way to his cell.  When Officer Hiers come out of the cube and came down the hall to where I was, I told Officer Hiers - - I said, Officer Hiers, I need to be escorted all the way to my cell.  He said, Okay.

When we got to unit three - - I slept upstairs in 315.  . . . they was up there waiting on me.  And I told him - - I said, come on and escort all the way to my cell. He said, I will stand here at the door and watch you.  I said, no, sir, you need to escort me all the way to my cell where I can get my stuff.

He said, I will watch you.  If something happens, I will hit the code.  I said, yes, sir, okay. So I went on up there, and sure enough when I turned to go in the room, Officer Hiers shut the door and left the unit and left me in there…

They - - they made me sit on the toilet, and I defecated for them. There was nothing. I told them I wasn't doing it.  They come in there with a – with a bag and they had knives, and they me down and wouldn't let - - wouldn't let Christopher Ramer leave the cell, made him stay in there. And stuck their hand up my rectum, and it hurt and I screamed and I hollered and I tried everything I could to get away, but they wouldn't let me go.  I done everything I could. And I tried to hit the panic button and it didn't work.  . . .

Anyway, the officer come up there -- …I don't know I guess 15 minutes later, and he saw what happened.  [Hiers] hit the code, here comes some more help.  And I had blood and stuff all over me.  And he looked at me and he said - - … he said, oh, I'm so sorry.  He said, I'm so sorry. I said, I told you that you was supposed to escort me all the way to my cell and this never would have happened to me.

I said, I need - - he said, I will be back to get you and take you to the infirmary. [Hiers] put me in …the gym.  He never come back and got me.  I was so embarrassed and so ashamed and just so traumatized while I was in there with them other inmates and they was all looking at me and I had this mess and blood. I wouldn't even get in the shower I was so – I was so ashamed.

And the next morning, one of the guys that participated in it, they had him working on the hall. And after I even told … Officer Hiers what they had done, they was on the hall laughing at me and telling the other inmates to get me. And so I started kicking the door and then [ Farmer] came to the door. I said, y'all have got to get me out of there. I said, y'all have to get me some help.

3

(Doc. 39-1 at 15-19).

Farmer then moved Purvis out of the gym to Unit 5. Purvis was in Unit 5 for about 30 minutes before he was taken to the hospital. During that time Purvis' phone was "cut off."[4] Another inmate called his mother who then called Purvis' sister, who then called the jail. About ten minutes after her call, Lieutenant Booker took him to the hospital (Doc. 39-1 at 25). Purvis was examined and diagnosed with an anal fissure. Upon return from the hospital, Purvis was transferred to Conecuh County Correctional Facility.

Farmer stated by affidavit that he did not speak with Purvis on the day of the attack. He was made aware the next day when Purvis told him of the attack and his alleged injuries. Purvis asked to be moved to Unit 5 and Farmer agreed to the move. Farmer then reported the attack and injuries to Ward. (Doc. 39-3).

Ward stated by affidavit that he instructed Officer Hiers to escort Purvis back to Unit 3, retrieve his belongings, and move him to the gym.  Ward did not see Purvis again on September 26th. Ward was formally made aware of the attack the next day. He advised the Nurse to send Purvis to the hospital and ordered an investigation. He also moved Purvis to another facility for safekeeping. (Doc. 39-2).

Purvis testified that Ward was in his office during or after the attack. Purvis walked by Ward's office after the attack when he was moved from Unit 3 to the gym.  Purvis testified that Ward's door was closed but he could see Ward through a window on his door.  Purvis did not speak to Ward. (Doc. 39-1 at 22-23).

---

[4] Purvis states that "they cut my phone off.  My phone was cut off. I don't know why they cut my phone off. I couldn't call my family." (Doc. 39-1, p. 25). Purvis was referring to the jailhouse phone, not an individual cell phone.

## II.   <u>Standard of review</u>

Pursuant to Fed. R. Civ. P. 56(a), "[a] party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought." The motion must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." <u>Id</u>. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." <u>Anderson v. Liberty Lobby, Inc.,</u> 477 U.S. 242, 247-248 (1986) (emphasis in original).  The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial [.]' " <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986) (quoting Fed. R. Civ. P. 56(e) advisory committee's note to 1963 amendment).

The movant, as the "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (internal quotation marks omitted). The movant can meet this burden by presenting evidence which shows there is no genuine dispute of material fact, or by showing that the nonmoving party failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp.</u>, 477 U.S. at 322, 106 S. Ct. at 2552.

The burden then shifts to the nonmoving party who must "go beyond the pleadings" and "by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F. 3d 590, 593-594 (11th Cir 1995) (per curiam) (quoting Celotex, 477 U.S. at 324). The nonmovant must raise "'significant probative evidence' that would be sufficient for a jury to find for that party." LaChance v. Duffy's Draft House, Inc., 146 F. 3d 832, 835 (11th Cir. 1998) (citations omitted).

The Court must "view the evidence and all factual inferences raised by it in the light most favorable to the non-moving party and resolve all reasonable doubts about the facts in favor of the non-moving party." Comer v. City of Palm Bay, Fla., 265 F. 3d 1186, 1192 (11th Cir. 2001). Overall, if a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the court should refuse to grant summary judgment." Barfield v. Brierton, 883 F.2d 923, 933-34 (11th Cir. 1989) (citation omitted)

## III.   Analysis

The allegations against Farmer and Ward in the third amended complaint are identical to those in the second amended complaint (Docs. 57, 24). Their answers and affirmative defenses are also the same as to the second amended complaint (Docs. 25, 58).

### A.  Qualified immunity

Pursuant to 42 U.S.C. § 1983, Purvis sues Ward and Farmer in their individual capacity for violating his rights under the Eighth Amendment. Specifically, for acting with deliberate indifference to a known substantial risk of serious harm and for acting with deliberate indifference to his medical needs stemming from a serious physical injury. (Doc. 57).

Ward and Farmer argue they are entitled to qualified immunity as to all claims against them. "The defense of qualified immunity completely protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Marbury v. Warden, 936 F.3d 1227, 1232 (11th Cir. 2019) (per curiam) (citations omitted).  The parties do not dispute that Ward and Farmer were government officials performing discretionary functions at all relevant times.[5] The evidence supports that they were, in fact, acting within the course and scope of their discretionary authority.

" 'Once it has been determined that the official was acting within his discretionary duties, the burden shifts to the plaintiff to show (1) that the official violated a constitutional right and (2) that the right was clearly established at the time of the alleged violation.' Our inquiry 'can begin with either prong.'" Marbury, 936 F.3d at 1232–33 (quoting Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1099 (11th Cir. 2014) and Morris v. Town of Lexington, 748 F.3d 1316, 1322 (11th Cir. 2014)).

A right is clearly established when a reasonable official would understand that their conduct violates that right. Coffin v. Brandau, 642 F.3d 999, 1013 (11th Cir. 2011) (en banc) (citation omitted). "The touchstone of the 'clearly established' inquiry is whether the official had 'fair warning' and notice that his conduct violated the constitutional right in question." Melton v. Abston, 841 F.3d 1207, 1221 (citations omitted).

---

[5] Ward and Farmer state that they were acting within the course and scope of their discretionary authority at the time of Purvis' assault. (Doc. 41 at 10). Purvis does not dispute this in his response. (Doc. 48).

The Eighth Amendment to the United States Constitution prohibits cruel and unusual punishment. U.S. Const. Amend. VIII. "Where, as here, the plaintiff is a pretrial detainee . . . , the Due Process Clause of the Fourteenth Amendment, not the Eighth Amendment's prohibition against cruel and unusual punishment, governs our analysis." Goodman v. Kimbrough, 718 F.3d 1325, 1331 n.1 (11th Cir. 2013) (citation omitted). However, we have recognized that "the standards under the Fourteenth Amendment are identical to those under the Eighth." Goebert v. Lee Cty., 510 F.3d 1312, 1326 (11th Cir. 2007) (citation omitted).

### 1) **Deliberate indifference to a substantial risk of serious harm**

A prisoner has an Eighth Amendment Right to be free from cruel and unusual punishment – i.e., serious harm – while incarcerated. U.S. Const. Amend. VIII. "A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment if he is deliberately indifferent to a substantial risk of serious harm to an inmate who suffers injury. See Farmer v. Brennan, 511 U.S. 825, 828, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)." Lane v. Philbin, 835 F.3d 1302, 1307 (11th Cir. 2016). For Purvis to succeed on an Eighth Amendment claim of deliberate indifference to a substantial risk of serious harm, he "must allege facts showing that: (1) a substantial risk of serious harm existed; (2) the defendants were deliberately indifferent to that risk, i.e., they both subjectively knew of the risk and disregarded it by failing to respond in an objectively reasonable manner; and (3) there was a causal connection between the defendants' conduct and the Eighth Amendment violation." Mack v. Miles, 795 F. App'x 682, 683–84 (11th Cir. 2019) (quoting Bowen v. Warden, Baldwin State Prison, 826 F.3d 1312, 1320 (11th Cir. 2016)).

"The first element of an Eighth Amendment claim—a substantial risk of serious harm—is assessed under an objective standard." Lane, 835 F.3d at 1307 (citations omitted). Mr. Purvis must allege conditions that were "sufficiently serious to violate the Eighth Amendment, i.e., conditions that were extreme and posed an unreasonable risk of serious injury to his future health or safety. See Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004)." Id. "[A]n excessive risk of inmate-on-inmate violence at a jail creates a substantial risk of serious harm; occasional, isolated attacks by one prisoner on another may not constitute cruel and unusual punishment, [but] confinement in a prison where violence and terror reign is actionable." Harrison v. Culliver, 746 F.3d 1288, 1299 (11th Cir. 2014) (citation and internal quotation marks omitted); see, e.g., Lane, 835 F.3d 1302 (A serious risk of harm existed in a cell unit for a non-gang-affiliated inmate where 90% of the cell unit was made up of gang members and there was consistent, regular inmate-to-inmate violence and a large amount of weapons present.).

Here, in the three weeks leading up to September 26th, there is insufficient evidence that Purvis faced a serious risk of harm; rather fellow inmates asked him to smuggle contraband into the prison, without threats of violence. And, no evidence has been submitted suggesting that Unit 3 was notoriously and consistently plagued by violence or host to consistent inmate-to-inmate attacks. It was not until the day Purvis was assaulted by other inmates that a serious risk of harm developed: the morning of September 26th, when an inmate demanded him to smuggle in contraband with threats of physical recourse if he failed to abide.

"The second element of an Eighth Amendment claim—the defendants' deliberate indifference to a substantial risk of serious harm—has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than

mere negligence." Lane, 835 F.3d at 1308 (internal quotation marks and citations omitted). "Prison officials might avoid Eighth Amendment liability where they show: (1) 'that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger'; (2) 'that they knew the underlying facts, but believed ... that the risk to which the facts gave rise was insubstantial or nonexistent'; or (3) 'that they responded reasonably to the risk, even if the harm ultimately was not averted.' Rodriguez v. Sec'y for Dep't of Corr., 508 F.3d 611, 617-18 (11th Cir. 2007) (quotation marks omitted) (quoting Farmer v. Brennan, 511 U.S. 825, 844, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994))." Rhiner v. Sec'y, Fla. Dep't of Corr., 817 F. App'x 769, 775 (11th Cir. 2020).

The first component requires Purvis to allege facts that Farmer and Ward actually knew that he faced a substantial risk of injury. Id. As discussed *supra*, Farmer did not speak with Purvis on September 26th. This fact coupled with the Court's finding that a substantial risk of serious harm did not exist until September 26th, relieves Farmer of liability on this claim since he was not subjectively aware of the risk of harm that developed. Accordingly, Purvis' Eighth Amendment claim against Farmer for deliberate indifference to a substantial risk of harm fails as a matter of law.

Ward, on the other hand, was made aware of the risk of harm to Purvis on September 26th; Purvis expressly told Ward prior to being assaulted that an inmate threatened to attack him, or "hurt [him] real bad," if he failed to bring in contraband. (Doc. 39-1 at 15). Thus, the first component of the second element for this Eighth Amendment claim is satisfied as to Ward.

The second component of the second element in an Eighth Amendment claim of deliberate indifference to a substantial risk of harm requires Purvis to prove that Ward disregarded the risk of serious harm. Lane 835 F.3d at 1308. "To show disregard of risk, the

plaintiff must produce evidence that the defendant disregarded a risk by failing to respond to it in an objectively reasonable manner. Caldwell, 748 F.3d at 1099." Rhiner 817 F. App'x at 775. However, if Ward proves that "they responded reasonably to the risk, even if the harm ultimately was not averted," then he will not be held liable. Farmer 511 U.S. at 844.

The undisputed evidence indicates that Ward acted reasonably and did not disregard the risk of harm to Purvis. As Purvis points out in his deposition, Ward ordered for Purvis to be moved out of Unit 3 and into a different Unit immediately after Purvis told Ward about the threats of violence, or substantial risk of harm, Purvis faced. Moving an inmate away from a cell unit where a risk of harm is presented is a reasonable response and does not constitute disregarding the risk.

Moreover, the third component of the second element in an Eighth Amendment claim of deliberate indifference to a substantial risk of harm requires Ward to act in a manner that is more than mere negligence. Lane, 835 F.3d at 1308. Ward immediately ordering Purvis to be moved out of Unit 3 after the substantial risk of harm arose does not constitute negligence; Ward was proactively trying to protect Purvis from the risk of harm he faced in a reasonable manner. And, although Purvis argues that Ward's failure to ensure that a guard escorted him all the way to his cell to gather his belongings constitutes recklessness, Purvis' deposition testimony expressly acknowledges that Ward told Purvis' "road boss" to "tell Officer Hiers to escort him all the way to his cell." (Doc. 39-1 at 16). Ward directing Purvis' "road boss" to tell Officer Hiers to escort Purvis to his cell does not constitute reckless behavior by Ward as Purvis argues. Accordingly, Purvis' claim of deliberate indifference to a substantial risk of harm against Ward fails as a matter of law.

**2) Deliberate Indifference to Serious Medical Need, i.e., Serious Physical   Injury**

Under the Eighth Amendment, state governments "have a constitutional obligation to provide minimally adequate medical care to those whom they are punishing by incarceration." Harris v. Thigpen, 941 F.2d 1495, 1504 (11th Cir. 1991). Prison officials violate the proscription on cruel and unusual punishments when they exhibit "deliberate indifference to serious medical needs of prisoners." Estelle v. Gamble, 429 U.S. 97, 104 (1976). "To show that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry." Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003). To establish the objective element, the plaintiff must demonstrate the existence of an "objectively serious medical need." Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004). "[A] serious medical need is considered one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Farrow, 320 F.3d at 1243 (quotation omitted). "In either case, the medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm." Brown, 387 F.3d at 1351 (quotation omitted). To meet the subjective element, a plaintiff must demonstrate that the prison official acted with an attitude of "deliberate indifference" to the serious medical need. Farrow, 320 F.3d at 1243.

To prevail on a claim of deliberate indifference to a serious medical need, "a plaintiff must show: (1) a serious medical need; (2) deliberate indifference to that need on the part of the defendant; and (3) causation between the defendant's indifference and the plaintiff's injury. Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1306–07 (11th Cir. 2009)." Magwood v. Sec'y, Fla. Dep't of Corr., 652 F. App'x 841, 844 (11th Cir. 2016). "A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person

would easily recognize the necessity for a doctor's attention. In the alternative, a serious medical need is determined by whether a delay in treating the need worsens the condition. In either case, the medical need must be one that, if left unattended, poses a substantial risk of serious harm." Mann, 588 F.3d at 1306 (internal quotation marks and citations omitted).

"Our circuit has held that, in order to prove that a deputy acted with deliberate indifference, Plaintiffs' must show: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) conduct that is more than mere negligence. Brown, 387 F.3d at 1351." Mann, 588 F.3d at 1307 (internal quotation marks omitted). "Conduct that is more than mere negligence includes: (1) knowledge of a serious medical need and a failure or refusal to provide care; (2) delaying treatment for non-medical reasons; (3) grossly inadequate care; (4) a decision to take an easier but less efficacious course of treatment; or (5) medical care that is so cursory as to amount to no treatment at all." Magwood, 652 Fed.Appx at 844. Even where medical care is ultimately provided, a prison official may act with deliberate indifference by delaying the treatment of serious medical needs. McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999) (per curiam). However, courts consider "(1) the seriousness of the medical need; (2) whether the delay worsened the medical condition; and (3) the reason for the delay" in determining whether a delay amounts to a constitutional violation. Goebert v. Lee County, 510 F.3d 1312, 1327 (11th Cir. 2007).

"A prisoner bringing a deliberate-indifference claim has a steep hill to climb." Keohane v. Fla. Dep't of Corr. Sec'y, 952 F.3d 1257, 1266 (11th Cir. 2020), cert. denied sub nom. Keohane v. Inch, 142 S. Ct. 81 (2021). Medical treatment violates the Eighth Amendment "only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Harris, 941 F.2d at 1505 (quotation omitted). Medical

malpractice, misdiagnosis, accidents, and poor exercise of medical judgement are insufficient to support a claim of deliberate indifference. Estelle, 429 U.S. at 104-07. "Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment." Harris, 941 F.2d at 1505.

The evidence indicates that Purvis obtained a serious physical injury that required medical care; he was assaulted by fellow inmates and his subsequent medical exam identified an anal fissure. (Doc. 39-6 at 8). Purvis argues that Farmer was deliberately indifferent to this serious physical injury by failing to provide adequate medical care because Farmer did not seek medical care for Purvis immediately after learning of his injuries on the *morning after the attack*. Purvis asserts that waiting "between 30 minutes and one hour…is to ignore the obvious condition" that calls for immediate medical attention. (Doc. 48 at 6). The Court disagrees, as Farmer went directly to Ward after learning of Purvis' physical injury on September 27th. Within "30 minutes and one hour," of Farmer becoming subjectively aware of Purvis' physical injury, Purvis was taken to the hospital.

The second element of deliberate indifference requires Purvis to prove that Farmer disregarded the risk presented by his physical injury. Mann, 588 F.3d at 1307. Yet, Farmer plainly did not disregard the risk – he did the opposite by seeking advice and subsequent medical care on Purvis' behalf. Moreover, Purvis has not alleged facts showing that Farmers' conduct constitutes more than "mere negligence." The evidence shows that Farmer proactively went to Ward to report Purvis' injury, resulting in Purvis going to the emergency room within an hour; this is not negligence. See supra pp. 13. Accordingly, Farmer was not deliberately indifferent to a serious medical need as a matter of law.

In regard to Ward, Purvis argues that there is a factual dispute as to whether Ward saw Purvis shortly after the attack when he was escorted to the gym from Unit 3 on September 26th. (Doc. 48 at 5). More specifically, Purvis testified that he saw Ward on September 26th, through Ward's office window and did not say anything to him because "he had his door closed." (Doc. 39-1 at 23). Ward argues that he did not see Purvis immediately after the attack on September 26th, and that he did not learn of Purvis' injuries until September 27th. (Doc 39-2 at 3).

Purvis' has failed to present sufficient evidence that Ward was subjectively aware of Purvis' attack on September 26th or that he knew of Purvis' injuries. Purvis testified that he saw Ward through the window – he did not testify that Ward saw him. (Doc. 39-1 at 23). Purvis expressly stated that he did not say anything to Ward as he was being escorted by Ward's office. Id. Thus, the evidence has not shown that Ward was subjectively aware of the physical injury to Purvis until September 27th, when Farmer reported the injury to him.

Since Ward had subjective knowledge of Purvis medical need on September 27th, Purvis must prove that Ward disregarded the risk of harm presented by his physical injury after learning of it. Mann, 588 F.3d at 1307. However, the undisputed evidence indicates that Ward did not disregard the physical injury Purvis sustained. Ward ordered for Purvis to be taken to the emergency room for medical treatment immediately after learning of Purvis' physical injury. Plainly, Ward's response does not constitute disregarding the risk of harm presented by Purvis medical need – he immediately addressed it. Accordingly, Purvis' claim against Ward for deliberate indifference to a serious medical need fails as a matter of law.

**IV.**  **Conclusion**

For the reasons set forth herein Ward and Farmer's Motion for Summary Judgment (Doc. 41) is **GRANTED**.

A Final Judgment consistent with terms of this Order shall be entered by separate document as required by Rule 58(a) of the Federal Rules of Civil Procedure.

**DONE** and **ORDERED** this the 3rd day of June 2022.

**/s/ Kristi K. DuBose**
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**

16